## REMEDY OF A DISCHARGED EMPLOYEE UNDER THE CIVIL SERVICE ACT.

### Superior Court of Cincinnati.

STATE OF OHIO, ON THE RELATION OF JOHN DUNN, v. PHILIP FOSDICK, DIRECTOR OF PUBLIC SERVICE OF THE CITY OF CINCINNATI, ET AL.

Decided, March 11, 1916.

*Civil Service—Classification and Protection of Employees a Legislative Function—Perfection of an Appeal—Necessity of complying with Prescribed Steps—Constitutionality of the Act—Courts Without Jurisdiction, Unless.*

1. The placing of certain positions in the classified service or in the unclassified service, or employees being protected by the civil service law, or not being protected by the civil service law, is a legislative function and not the exercise of executive duties, and Section 486-31 of the General Code of Ohio, known as the Moore-Barnes Act, is constitutional and not violative of Section 1 of Article II of the Constitution of Ohio.

2. Under the civil service law, Section 486-17a of the General Code of Ohio, the employee removed is required within ten days from the date of such removal to perfect his appeal from said order of dismissal to the civil service commission. This section is mandatory in effect, and if not complied with, such employee is without remedy in a court of law.

*Moulinier, Bettman & Hunt,* for plaintiff.
*Charles A. Groom* and *Saul Zielonka,* contra.

GUSWEILER, J.

The question before the court arises on a demurrer filed by the defendants to the reply of the relator.

The relator prays for a writ of mandamus directed to the director of public service of the city of Cincinnati, ordering him to recognize the relator as the lawful incumbent of the position of stableman.

In January, 1912, the relator was appointed to the position of laborer in the city water works. This position originally in the

unclassified service was later given the name of stableman and came into the classified service. The relator never took a non-competitive examination because no opportunity was afforded, but when a competitive examination for the position was held, he took that examination and passed it, though with an average not among the three highest. In September, 1915, the relator was notified by the director of public service that his services were discontinued by virtue of the new civil service law (106 O. L., 419). Thereafter the relator was excluded from his work and his name stricken from the pay-roll.

There are two questions at issue in this case:

1. Is the relator compelled to take the steps prescribed by Section 486-17a prior to filing a proceeding in court?

Section 496-17a provides that in cases of removal the appointing authority shall furnish the employee or subordinate with a copy of order of removal and his reasons for the same, and give such officer, employee or subordinate a reasonable time in which to make and file an explanation. Such order with the explanation, if any, of the employee or subordinate shall be filed with the commission. Any such employee or subordinate so removed may appeal from the decision or order of such appointing authority to the state or municipal commission, as the case may be, within ten days from and after the date of such removal, in which event the commission shall forwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the commission, and it may affirm, disaffirm or modify the judgment of the appointing authority, and the commission's decision shall be final.

Section 31 of the civil service law divides the employees into three classes:

A. Those who were in positions by virtue of appointment from eligible lists as the result of competitive examinations.

B. Those who have served the state or any political subdivision thereof continuously and satisfactorily for a period of not less than seven years next preceding January 1, 1915.

C. Those who were not in the service continuously for a period of seven years and who had not taken a competitive examination.

The civil service law does not in and of itself vacate an office or discharge an employee. Section 486-31 provides that the appointing authority shall within ten days after this act becomes effective report to the commission the name of each officer, employee and subordinate holding a position in the classified service of the city at the time this act becomes effective who has not passed a regular competitive examination and who has not been in the service seven years as herein provided. This law does not vacate an office or discharge an employee. The law provides that within ten days the appointing officer shall report the names of those not holding their positions in Classes A and B. The effect of the law is to take away the protection of the civil service law from those in Class C. That in itself does not discharge the employee, but places him in the position where he may be discharged by the appointing officer. The employee's name in Class C is certified by the commission to the appointing officer with three names from the eligible list and the appointing officer has the power to retain his employee, and when he signifies his intention of retaining the employee, he immediately becomes a civil service employee and is protected by the provisions of said act.

The employee of Class C, not being protected by the civil service act, the director of public service has the legal right to discharge him for any reason that appeals to him, or indeed without any reason at all. (So held in the case of *State, ex rel Connolly*, v. *Fosdick et al*, 17 N.P.(N.S.), 486, in an able opinion by Pugh, J.) The director of public service in this cause assigned as his reason for the discharge the enactment of the new civil service law, and thereby it became the duty of the relator to proceed under Section 486-17a in order to be reinstated.

The Dayton Conservancy Act.—In the case of *County of Miami et al* v. *City of Dayton et al*, 92 O. S., the court says on page 219:

"A statute undertaking to provide a rule of practice, a course of procedure or a method of review, is in its very nature and essence a remedial statute. It should not be narrowly and technically construed, but upon the contrary should receive

a broad and liberal construction to effect the purpose of its enactment.''

Section 486-17*a* was enacted for the purpose of providing a *quasi*-judicial tribunal to determine the correctness of a discharge, and until the relator has exhausted his remedies under this statute, this court has no jurisdiction.

The court of appeals in the case of *State, ex rel. Fischer,* v. *Fosdick,* 25 C.C.(N.S.), 241, say:

"The petition does not show the relator, after the notice of discharge was served upon him, filed any explanation or asked the commission to reinstate him, and as long as he has a remedy under the civil service law, he must pursue that remedy and can not appeal to the courts until he has exhausted his remedy under that law."

The pleadings in this case do not show that the relator has exhausted his remedy under the civil service law, and therefore the demurrer to the relator's reply is sustained.

2. The constitutionality of the law.

The Moore-Barnes civil service law was enacted in order to carry out the will of the people as expressed by Article XV, Section 10, adopted September 3, 1912, which reads as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

This section confers plenary powers on the Legislature to pass a civil service law. The kind and character of the civil service law is peculiarly for the Legislature to determine, and courts have not the power to declare a law unconstitutional merely because it does not agree with the policy determined upon by the Legislature.

The latest expression of the Supreme Court of Ohio relative to the court's power to declare a law unconstitutional is found in the decision of the Supreme Court in the conservancy act, *County of Miami et al* v. *City of Dayton, supra:*

"7. Before a court is warranted in declaring a legislative act unconstitutional, it must clearly appear that the statute is obviously repugnant and irreconcilable with some specific provision or provisions of the Constitution. If there be a reasonable doubt as to such conflict the statute must be upheld." (Syl.)

"8. The doctrine of home rule does not now, and never did, have any application to the governmental affairs of a state or the governmental affairs of a district within the state created by the state for the exercise of certain state sovereign powers." (Syl.)

The relator refers to Section 1 of Article II of the Constitution as the specific provision of the Constitution violated by the enactment of Section 486-31 of the Moore-Barnes act.

The relator's contention is that Section 486-31 is the exercise of executive duties, and not legislative. The placing of certain positions in the classified service or in the unclassified service, or employees being protected by the civil service law, or not being protected by the civil service law, is a legislative function, and the Legislature in this case exercised that legislative function by prescribing under what conditions an employee shall be considered as being protected by the civil service law, or shall not be considered as being protected by the civil service law. The language of the Legislature lays down the qualifications essential for the holding of a position in the classified service, and this certainly the Legislature may do.

In the case of State, ex rel Carnes et al, v. Fosdick, No. 55859, Superior Court, the opinion of Pugh, J., the court holds that the incumbency clause of Section 10 of the civil service act of 103 Ohio Laws, p. 698, at p. 703, is constitutional, and the reasons assigned by this court in said case are applicable to the question at issue in this case.

The Constitution of Ohio divides the power of the government into three classes—executive, legislative and judicial. It is impossible to give an accurate definition of each of these powers that would embrace all cases that may arise in the future. Our courts recognize quasi-judicial, quasi-legislative, and quasi-executive powers, and the Supreme Court in the Dayton conservancy act, syllabus 9, says:

"Where a power is *quasi*-legislative, *quasi*-administrative or *quasi*-judicial, or so mixed in its nature that it may be regarded as a combination of all of them, the Legislature may in the first instance characterize such power and confer it either upon an existing agency of the government or an agency especially created for that purpose. There is no delegation of legislative power in the conservancy act violative of any constitutional provision."

The enactment of Section 486-31 is, in the opinion of this court, an exercise of legislative power, and the utmost that can be said against it is that it is a *quasi*-legislative power. In either case, the law is constitutional.

The Legislature, by express constitutional provision, has the power to enact a civil service law; the kind or character of law to be enacted is for the Legislature to determine, and having passed the Moore-Barnes act, this court will not consider and hold said act unconstitutional, unless the opposition between the Constitution and the law should be such that the court feels a clear and strong conviction of their incompatibility with each other. (*State, ex rel*, v. *Miller*, 87 Ohio St., 12.)

It is the finding and opinion of this court, first, that the relator did not pursue his remedy under the civil service law and therefore this court has no jurisdiction, and second, that the law is constitutional.